### UNITED STATES v. RYAN et al.
#### No. 14066.

District Court, W. D. Missouri, W. D.
May 19, 1938.

514

Maurice M. Milligan, Randall Wilson, and Sam Blair, all of Kansas City, Mo., for the United States.

Clyde Taylor, of Kansas City, Mo., for defendant Mathew Devoe.

Price Wickersham, of Kansas City, Mo., and Bruce Barnett, of Joplin, Mo., for defendant Frances Ryan.

OTIS, District Judge.

This memorandum is dictated on Thursday afternoon (May 19, 1938) following the presentation of the motions for new trial on Thursday morning and an order overruling them. When that order was announced I indicated that I would file a memorandum setting out the reasons for the order. I do not suppose that the memorandum will be

of special value. I have always understood, however, that the Court of Appeals appreciates a statement of reasons for the rulings of the District Court. From my own experience, as an occasional member of the Court of Appeals, I know that much labor is saved to that court if it has before it the considerations which have led the District Judge to certain rulings.

I do not purpose to discuss all the points made in the two motions. In memoranda heretofore filed in the case I have stated the reasons for certain important rulings (as on the pleas in abatement, the plea autrefois convict, etc.). I refer to them and also to various published opinions connected with earlier election fraud cases.

### The Charged Coercion of the Jury.

 I cannot restrain an expression of regret that learned counsel for the defendant Devoe, whom I esteem most highly (I expressed my admiration for him repeatedly during the trial, in the presence and hearing of the jury) has seen fit to charge that I coerced the jury into returning its verdict (Point 7 of Devoe's Motion for a New Trial). I suppose it was meant by that that I coerced the jury into returning a verdict of guilty as to both defendants, including Devoe. The unfairness of that suggestion clearly will be apparent to any reviewing court which reads the record of this case, especially the charge to the jury.

If ever there was a trial in which there was less basis for a suggestion of unfairness and partiality on the part of the trial judge and for a charge that he coerced a verdict of guilty, I have no knowledge of it.

I went to the most extraordinary limits to convince learned counsel for the defendants and the defendants themselves that they would have and were having a fair trial and even more than they were entitled to have. No request of any kind made by them or on their behalf, which was at all within reason, was denied. Some requests beyond reason were granted. I point to a few conspicuous instances.

1. Before the time for the argument of the case to the jury had arrived I announced to counsel that I should like to have any requests to charge in time to consider them before the argument. Counsel for defendants complied with that request and submitted requested charges in writing. Counsel for the defendant Devoe asked for a conference before the argument. That request was immediately and gladly granted.

All of counsel assembled in chambers. I do not now recall whether a stenographer was present. What transpired was this: I asked counsel for defendant Devoe what he desired to say touching the charge. He made two oral requests. My answer was, the requests will be granted, the matters referred to will be incorporated fully in the charge. Then counsel for the defendant, Devoe, made a further and most extraordinary request. He requested that in the charge to the jury the judge should not discuss the facts nor comment on the evidence. The request was made in the present of counsel for defendant Ryan. They did not protest. It was viewed by me as having been made on behalf of both defendants.

I suppose that a request of a federal judge more amazing than this one never was made. The federal judge's historic function of advising the jury as to the facts always has been regarded as a function at least potentially vital to the intelligent administration of justice. Attacks upon that function have been rebuked within the last few months by the Conference of Senior Circuit Judges, headed by the Chief Justice of the United States, and by the American Bar Association. Notwithstanding the amazing character of this request, it was heard courteously and granted. There was no reference of any kind in the charge to the evidence in the case.

2. At the conclusion of the final argument of the United States Attorney, the attorney for Devoe challenged the fairness of the peroration of the United States Attorney, and made the astonishing request that he be permitted to reply. I suppose that never before has an attorney for a defendant on trial in a criminal case asked for the privilege of saying the last word to the jury. That request too was granted.

3. The attorney for the defendant Devoe, during a recess of the court, while the jury was deliberating upon its verdict, inquired of me in the clerk's office (at three o'clock on Thursday afternoon) how long the jury would be asked to deliberate upon the case. He most courteously and respectfully suggested, not in so many words but by the fact and manner of inquiry, that to require the jury to deliberate too long might tend to coerce a verdict. Reflecting upon that intimation and determined that no complaint of coercion should be made of me justly, I decided that I would discharge the jury at five o'clock, if it had not reached a verdict before that hour. The jury had

deliberated three hours on Wednesday and had deliberated from nine o'clock on Thursday. to twelve, noon, and from one o'clock p. m. to about three o'clock (a total of only eight hours), when counsel spoke to me in the clerk's office. Having made up my mind that the jury would be discharged at five o'clock, I thought it was just to the jurors to advise them of that fact. I did that. The record will show what I said. There was not one word in what was said then, or at any other time, concerning the expense of a second trial, although the Motion for a New Trial has it that reference to the expense of another trial was included. What was said was nothing but a gentle, kindly, impartial appeal, that the jury, if every member of the jury could conscientiously agree with his associates, agree upon a verdict, either for the defendants or for the government. And that is called coercing a verdict of guilty.

### So-called Inflammatory Argument of United States Attorney.

The only other complaint in Devoe's Motion for a New Trial to which I shall make any reference is that the final remarks of the United States Attorney in his closing argument "were highly prejudicial, inflammatory and improper." But these remarks were no more than this,—that the right to cast a freeman's ballot has been purchased by Americans through centuries of sacrifice and struggle,—that it is a valuable, a priceless heritage,—that conspiracies to rob citizens of this sacred right are grievous crimes. How can it be intelligently argued by any man that such a statement of elementary truths, with which every decent citizen will at once agree (counsel for the defendant Devoe asked the privilege of telling the jury that he agreed with everything the United States Attorney said)—how can it be said that such statements are prejudicial, inflammatory and improper?

### The Weight of the Evidence.

The point made in Devoe's Motion for a New Trial (the same point in effect is made in Ryan's Motion) that the verdict was against the weight of the evidence is peculiarly addressed to the discretion of the trial judge. Because it is a contention which is addressed peculiarly to the discretion of the trial judge and because it cannot be error to overrule it, it should be considered with especial conscientiousness. I have endeavored to so consider it.

It is quite true that except for the testimony of the witness Hayde there would not have been enough evidence in the case to justify its submission to the jury. While there was other testimony that undoubtedly was competent and that furnished a background for the whole picture, it was the testimony of Hayde that placed the figures of the defendants against that background. Outside of his testimony, there was evidence of the positions held in the so-called Pendergast organization by Mrs. Ryan and Devoe,—that she was the ward leader or boss, that he was her first lieutenant, that she appointed the precinct captains, and had the power to remove them, that she was the superintending authority for the Pendergast organization in registration and election matters in the twelfth ward. Outside of Hayde's testimony, there was testimony of the great fraud perpetrated on the Republican voters in the second precinct and testimony showing the manner in which that fraud was perpetrated. Still other details of the picture were filled in by the testimony of witnesses other than Hayde. But Hayde's was the fatal testimony. That must be admitted.

Hayde was a man of fine appearance on the witness stand, at least seemingly honest and frank (the argument to the jury of counsel for the defendants emphasizes those facts). His testimony had all the ear marks of truth. It was not shaken by the most vigorous cross examination of most able counsel. It was argued that he was an interested witness. Undoubtedly the jury believed (as I believed) that he was an interested witness. He had not been made a promise, but certainly he expected to receive consideration on account of his testimony, if the judge should believe that he testified truthfully. At the time of the filing of this memorandum, he has received consideration. But the jury believed his testimony in its important essentials. While the jury was not told what I believed about his testimony (since I made no reference whatever to the testimony of any witness), now I say that I too believed his testimony in all of its essentials. If I did not, it would certainly be my duty to sustain this motion for a new trial. What we have then is the positive testimony of an intelligent witness, clear,

full, complete, tying each of the defendants into the conspiracy beyond any possibility of doubt.

It is necessary to disbelieve the testimony of the two defendants if the testimony of Hayde is believed. Their interest in the outcome of the trial was certainly greater than was his interest. The credibility of the dominating one of the two was greatly damaged by proof that only recently she had been convicted of a similar offense and was under sentence of imprisonment for three years. In the earlier trial she had denied her guilt quite as strenuously as at this trial. The corroboration offered by defendants was not corroboration as to vital matters, although a non-discriminating and unintelligent jury might well have thought it was corroboration. There was no witness (except Devoe) who testified that Devoe did not in a private room give to Hayde the specific instructions which Hayde said were given to him by Devoe. The question for the jury really was to determine whether, on the one side, Hayde spoke the truth, or, on the other side, Devoe and Ryan spoke the truth. The jury believed and I believe that the weight of the evidence was with the Government. The jury believed indeed as do I that the testimony proved defendants' guilt beyond a reasonable doubt.

### The Requests to Charge.

■ The only instruction to the jury requested by the defendant Devoe which was not given either in words or in substance was an instruction reading as follows:

"The Court instructs the jury that the conspiracy attempted to be proved by the United States in this case except as to the witness Hayde, is based on circumstantial evidence. In such cases, the Court instructs you that as to each defendant the circumstantial evidence relied on by the United States must be inconsistent with innocence and exclude every other reasonable hypothesis except that of guilt and the case as to each defendant must be tested by this rule."

This instruction was refused because it did not state the truth. The testimony of the conspiracy charged was not circumstantial, it was direct. The witness Hayde testified to express and positive directions made by each of the defendants which, if they were made, proved the conspiracy. There was nothing circumstantial about this testimony.

■ Some complaint is made by the defendant Devoe of the fact that his requested instruction to the effect that the verdict of guilty must reflect the conscientious judgment of each juror was not made sufficiently emphatic. It is true that I did not beg and implore the jury to disagree. But it was said to the jury, over and over again, that the verdict of the jury must reflect the conscientious judgment of each juror. In the last words that were spoken to the jury was embodied this expression—"You must not forget that the verdict of the jury must be the conscientious verdict of each juror. I want to make that as emphatic as I can."

While most of the instructions requested by the defendant Devoe were given exactly as they were asked, and almost all of them were given in substance, the instructions requested by the defendant Ryan largely were refused. I desire to state the reasons for the refusal of the court to give these requested instructions.

■ Defendant Ryan's requested instruction 1 was refused because it did not state the truth. There was evidence to show that the defendant Ryan was a party to the same conspiracy to which the witness Baldwin later became a party. On that account the requested instruction was refused.

■ Defendant Ryan requested instruction No. 2. In so far as it asked the court to say that the evidence against the defendant Ryan was solely that of the witness Hayde, it was given in substance repeatedly in the charge. The particular instruction was denied because it did not correctly state the law. A conspirator may be convicted upon the uncorroborated testimony of an accomplice. That is the law in the Eighth Circuit and as declared by the Supreme Court of the United States.

■ Defendant Ryan's requested instruction No. 3 was refused because it does not correctly state the law. It is incorrect to say that the testimony of the witness Baldwin constitutes no evidence that the defendant Ryan entered into any conspiracy for any purpose alleged in the indictment. The testimony of the witness Baldwin certainly tended to prove that there was a conspiracy to do the unlawful things accomplished in the precinct referred to in the indictment. By itself, of course, that testimony did not implicate the de-

fendant Ryan and the jury was so told over and over again. The testimony was, however, evidence which, together with other evidence, linked the defendant Ryan with the alleged conspiracy and its object.

Defendant Ryan's requested instruction No. 4 was refused essentially for the same reason as requested instruction No. 3 was refused. It was not true that the testimony of the witness Baldwin constituted no corroboration of the testimony of the witness Hayde as to whether defendant Ryan entered into the alleged conspiracy. Of course, the testimony of Baldwin did not prove the conspiracy or tend to prove the conspiracy. It was, however, corroboration of the testimony of Hayde touching the conspiracy. That the conspiracy was carried out in accordance with the plans laid down by the original conspirators certainly is corroboration, although not definite proof, of the fact that the conspiracy was entered into.

Defendant Ryan's requested instruction No. 5 was refused because it was misleading and did not correctly state the law. The fact that certain defendants were subordinates of defendant Ryan was a fact which was to be considered with other facts as proving her guilt.

Defendant Ryan's requested instruction No. 6 was refused because it does not state the law. It would have been incorrect to say that if the jury believed the defendant Ryan had entered into such a conspiracy as was charged in the indictment they should find her not guilty, if they should also believe her to be a party to a larger conspiracy of which this conspiracy was a subordinate part. If the evidence proved that Mrs. Ryan and the witness Hayde conspired to injure voters in the second precinct of the twelfth ward (that is, if the evidence proved the conspiracy charged in the indictment), it is inconceivable that she should be found not guilty of that crime on the ground that the particular conspiracy charged was but a part of a greater conspiracy, of which she

was a party, to injure all the Republican voters in the twelfth ward, and, perhaps, of a still greater conspiracy, to injure all of the voters in the whole of Kansas City. If A conspires with B to steal all of the horses in X township, how can that be a defense to a charge of conspiracy between A and B to steal John Doe's horse, although John Doe lives also in X township. Suppose upon this trial defendant Ryan had testified as follows: "Yes, I conspired with Hayde to deprive Republican citizens in the second precinct of the twelfth ward of their votes. I admit that. But I did more than that. I conspired with Hayde to deprive all Republicans in the twelfth ward of their vote. More than that, I conspired with Hayde to deprive all Republicans in Kansas City of their votes." It is possible that it would have been the duty of the court to instruct the jury that if they believed Mrs. Ryan's testimony they should find her not guilty. The absurdity of such a contention seems apparent on its face.

There is another thing to be said concerning each one of these requested and refused instructions, except that last discussed. Each of them is a comment upon some part of the testimony or a reference to the testimony of some particular witness. Defendants through their counsel had expressly asked the court not to comment on the evidence, not to review the testimony, not to mention the facts in the charge to the jury. Certainly counsel did not mean only that the court should omit from the charge reference to testimony tending to connect the defendants with the offense alleged in the indictment, but, wherever possible, should comment in their favor. Having asked the court not to discuss the facts in the charge, they cannot consistently complain because specific requested instructions were denied, each of which, even if it were otherwise correct in fact and law, was a specific comment upon some part of the testimony or the testimony of some witness.